THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM FRARY, Defendant-Appellant.

Fifth District No. 74-328

Opinion filed February 25, 1976.

CARTER, J., dissenting.

Stephen P. Hurley, of State Appellate Defender's Office, of Mt. Vernon, and Leslie Miller, Law Student, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, William Frary, was convicted after a jury trial in the Circuit Court of Jackson County of involuntary manslaughter, reckless homicide, and leaving the scene of an accident involving death and was found not guilty of driving while intoxicated. After denying defendant's post-trial motion and hearing evidence in mitigation and aggravation, the court sentenced defendant to 2 to 6 years' imprisonment on the involuntary manslaughter conviction.

The issues presented by this appeal are: whether the essential elements of involuntary manslaughter and reckless homicide were proven beyond a reasonable doubt; whether the jury was properly instructed; and whether the sentence imposed should be reduced.

Early on the morning of the offense, the defendant was at the Road Runner Club, a night club located between Carbondale and DuQuoin, Illinois. At some time between 2 and 4 a.m., Robert Dickson, a friend of the defendant, arrived at the Road Runner on his motorcycle seeking gasoline for an automobile stranded on highway 51, south of the Road Runner. The defendant offered to follow Dickson to the stalled auto and siphon gas from his car's tank. Dickson and Frary shortly thereafter left the Road Runner and proceeded south on Route 51. Frary testified that he had consumed between two and three beers since midnight. The defendant followed Dickson at a speed of approximately 75 miles per hour. Defendant did not know that the stalled car was located just south of the Big Muddy bridge. Frary testified that he had no notice that Dickson was slowing down until Dickson was exiting from the bridge and he was still on the bridge, three or four car lengths behind. He stated that he heard Dickson shift to a lower gear and that the motorcycle appeared to be out of control and began to fall on its side. The defendant also thought that Dickson was perhaps deliberately "dumping" his cycle. As defendant's auto passed, the cycle went out of control, throwing Dickson and his rider, Maureen Grady. Ms. Grady fell on the pavement in the north-bound lane sustaining numerous injuries including a compound fracture of her left leg. Dickson landed in the ditch on the east side of the road, sustaining fatal head injuries. Defendant testified that he braked to avoid hitting the motorcycle but could not swerve because he was still on the bridge, and that he was not sure that he actually struck the cycle. Two persons in the stalled car, Mary Ellen

Owens and Robert Kruse, stated that it appeared that the car following the motorcycle was gaining on the motorcycle as the vehicles approached and that as the cycle crossed the center line it was struck from the rear by defendant's automobile, which did not stop but sped away from the scene. Frary testified that he could not remember anything after the alleged collision but that he left the scene because he was afraid Dickson would blame him for damaging his motorcycle.

A few hours later, after daybreak, the defendant's auto was found obstructing a railroad crossing on Dillinger Road, about 2½ miles east of Route 51. The defendant was discovered around 8 a.m. by Robert Scott, a deputy sheriff of Jackson County who had investigated the motorcycle accident, face down in a driveway a few blocks from his car. The defendant was awakened by Deputy Scott only when the latter lifted him from the driveway and placed him against his patrol car. Frary told Scott that he could not remember how he or his car came to be where they were found. Scott testified that he noted an odor of alcohol on the defendant's breath but said that this odor could result from one beer. No tests were administered and no other indications of intoxication were observed.

The defendant was picked up for questioning in connection with the motorcycle accident the next day after paint chips observed on the rearview mirror of Dickson's motorcycle and extracted from oil deposits on the roadway at the scene of the accident were observed by police to be of a color similar to that of defendant's car. (At trial, however, the testimony indicated that the latter paint chip might have come from defendant's auto, while the former could not have.) Upon being duly advised of his constitutional rights he admitted that he was involved in the accident and that his car struck the motorcycle. He detailed other matters leading up to the accident which were similar to his testimony at trial.

Defendant first contends that he was not proven guilty beyond a reasonable doubt of involuntary manslaughter. He also argues that the allegations that he was driving while under the influence of alcohol and at an excessive rate of speed were material allegations which the State was required to prove; that the State did not prove these allegations beyond a reasonable doubt; and that, therefore, his convictions for involuntary manslaughter and reckless homicide must be reversed. We believe that regardless of whether the State was required to prove these allegations, the State failed to prove beyond a reasonable doubt that defendant committed the offense of involuntary manslaughter or reckless homicide.

■■ A person commits the offense of involuntary manslaughter when

he kills an individual without lawful justification and his acts "which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." (Ill. Rev. Stat. 1973, ch. 38, par. 9—3 (a).) The gravamen of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be reckless or wanton negligence "and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. [Citations.]" (*People v. Crego*, 395 Ill. 451, 70 N.E.2d 578 (1946).) Before a guilty verdict of involuntary manslaughter in operating an automobile can be allowed to stand, it must appear from the record that the defendant knew of the danger of collision and recklessly, or wantonly collided with the decedent without using those means reasonable and at his command to prevent the accident. (*People v. Crego.*) In the present case, it was established that defendant was traveling at a rate of speed, 10 to 15 m.p.h. above the posted limit, but driving a vehicle in excess of the speed limit does not constitute criminal negligence or willful and wanton misconduct in the absence of aggravating factors. (*People v. Potter*, 5 Ill. 2d 365, 125 N.E.2d 510 (1955); *People v. Johnson*, 30 Ill. App. 3d 974, 333 N.E.2d 258 (1975).) While Robert Kruse testified that it appeared to him that the defendant's auto was going faster than the decedent's motorcycle the entire time they were within his sight, and Mary Ellen Owens testified that it seemed that the two vehicles were "awfully close" and that the defendant's auto did not seem to be slowing down, the record indicates that the two vehicles had been traveling at approximately the same speed. The State argues that defendant was criminally negligent in failing to drive onto the shoulder to avoid striking the motorcycle, which was described as turning across the center line of Route 51 when the alleged collision occurred. However, the defendant did not know the location of the stalled car. In hindsight it would appear that defendant should have veered to the right to avoid Dickson's motorcycle, but at the time, with Dickson's motorcycle apparently out of control, we do not believe that defendant was reckless or criminally negligent in not doing so. He did not know when or where Dickson would turn off or what path the motorcycle might take if it went out of control. Furthermore, the State failed to prove that the defendant was under the influence of alcohol at the time of the accident. The only improper conduct with which defendant can reasonably be charged is failure to maintain a safe interval and driving in excess of the speed limit, which we hold is insufficient in this case to prove beyond a reasonable doubt willful or wanton conduct, recklessness, or criminal negligence. Therefore the conviction of involuntary manslaughter must

be reversed and the verdict finding him guilty of reckless homicide must be vacated.

■■ Defendant does not challenge his culpability for leaving the scene of an accident involving death and failure to report the same (Ill. Rev. Stat. 1973, ch. 95½, pars. 11—401(a) and (b)), and hence that conviction still stands. However, since a sentence of 2 to 6 years in the penitentiary is not a permissible term of imprisonment for these offenses (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(5), (c)(5), and 1005—8—3 (a)(1)), we remand this cause to the Circuit Court of Jackson County for resentencing on these charges.

For the foregoing reasons, we reverse the judgment entered on the verdict of involuntary manslaughter and vacate the finding of guilt of reckless homicide. The sentence imposed is vacated and the cause remanded to the Circuit Court of Jackson County for resentencing.

Reversed and remanded.

JONES, J., concurs.

Mr. JUSTICE CARTER, dissenting:

The testimony of the witnesses for the prosecution all pointed to the fact that the defendant was traveling at an excessive rate of speed just prior to the accident. There was also testimony that defendant's car was following too closely behind the motorcycle. Driving at an excessive rate of speed and following too closely, in conjunction with other circumstances indicating a conscious disregard of a substantial risk likely to cause great bodily harm or death, justifies a finding of recklessness. *People v. Prendergast*, 95 Ill. App. 2d 41.

The case presented by the prosecution and the testimony of the defendant that he had a lapse of memory and remembers nothing from the time of the impact to the time he was awakened 3 hours later were more than sufficient to sustain the jury's verdict that the defendant was guilty of involuntary manslaughter.

Since the defendant was convicted of both reckless homicide and involuntary manslaughter arising from the same facts, I would vacate the conviction for the lesser offense of reckless homicide. I would affirm the conviction of involuntary manslaughter.