# Illinois Official Reports

## Appellate Court

---

### *People v. Stutzman*, 2015 IL App (4th) 130889

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOS, Plaintiff-Appellee, v. DARYLL G. STUTZMAN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0889 |
| Filed | August 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 12-CF-17; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Kelly M. Weston, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Seth Uphoff, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
                    Justices Holder White and Appleton concurred in the judgment and opinion.


## OPINION

¶ 1        In June 2013, defendant, Daryll G. Stutzman, pleaded guilty pursuant to a negotiated guilty plea agreement to (1) reckless homicide (720 ILCS 5/9-3(a) (West 2010)) and (2) aggravated driving under the influence (aggravated DUI) (625 ILCS 5/11-501(d)(1)(F) (West 2010)). In August 2013, the trial court imposed concurrent sentences of three years for each offense.

¶ 2        Defendant appeals, arguing that (1) his convictions violated the one-act, one-crime doctrine; and (2) the trial court abused its discretion by failing to find extraordinary circumstances existed to impose a sentence of probation. Because we agree with defendant's first argument, we vacate his conviction for reckless homicide and remand with directions.


¶ 3                                I. BACKGROUND
¶ 4                              A. The State's Charges
¶ 5        In January 2012, the State charged defendant with (1) reckless homicide (count I), (2) aggravated DUI (count II), and (3) two counts of DUI (625 ILCS 5/11-501(a)(1) (West 2010)) (counts III and IV).

¶ 6        In count I, the State alleged the following:

> "[D]efendant, on or about *** September 11, 2011, *** while acting in a reckless manner, performed acts likely to cause death of, or great bodily harm to, some individual in that he operated *** a yellow, 2000 Jeep Wrangler *** at a time when his blood-alcohol content was above .08, with an unrestrained, intoxicated front seat passenger in a vehicle with detached doors, and turned *** at a speed which was greater than was reasonable and proper with regard to existing conditions, causing Lisa Loyer to fall from the vehicle, thereby causing [her] death ***."

¶ 7        In count II, the State alleged the following:

> "[D]efendant on or about *** September 11, 2011, *** drove a motor vehicle, a yellow 2000 Jeep Wrangler, *** while the alcohol concentration in such person's blood or breath was .08 or more *** was involved in a motor vehicle accident that resulted in the death of Lisa Loyer ***."


¶ 8                          B. Defendant's Guilty Plea Hearing
¶ 9        At a June 2013 hearing, defendant pleaded guilty to counts I and II. In exchange for defendant's guilty plea, the State dismissed the remaining counts but did not make any sentencing recommendations. After appropriately admonishing defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), the trial court considered the State's factual basis and the parties' stipulation that Loyer was unrestrained at the time of the accident.

Thereafter, the court (1) accepted defendant's guilty plea and (2) ordered the probation office to prepare a presentence investigation report (PSI).

¶ 10                                  C. Defendant's Sentencing Hearing
¶ 11                                     1. *The Evidence Presented*
¶ 12       At defendant's August 2013 sentencing hearing, the trial court considered (1) a drug and alcohol evaluation report provided by the Illinois Department of Human Services; and (2) defendant's PSI, which provided a section entitled, "Circumstances of Offense," that was substantially similar to the factual basis the State provided at defendant's June 2013 guilty plea hearing. The evidence presented at defendant's sentencing hearing showed the following.

¶ 13       On the evening of September 11, 2011, defendant, a corrections officer at Dwight Correctional Center, was at Banger's Bar, a business that he co-owned. One of defendant's patrons that night was Loyer, a fellow corrections officer. Sometime prior to 11 p.m., defendant observed that Loyer's alcohol consumption had rendered her unable to drive. Defendant asked Loyer for her car keys, intending to drive her home. After Loyer complied, defendant assisted Loyer to her Jeep–which did not have a driver or passenger door. While driving Loyer home, defendant attempted a left turn. As he did so, Loyer fell out of the Jeep, struck her head on the roadway, and later died from her injuries.

¶ 14       Responding Illinois State trooper Matthew Frizzell noticed a "moderate" odor of alcohol coming from defendant's breath. Defendant admitted that he had been drinking "every now and then over the course of [three to four] hours" while bartending, but he refused to submit to a Breathalyzer test or have his blood drawn. Defendant also claimed that the half-full bottle of "Mike's Hard Lemonade" another trooper found upright on the driver's side floorboard of the Jeep must have been Loyer's. Because of the serious nature of Loyer's injuries, Frizzell had defendant's blood drawn involuntarily. Testing later revealed that defendant's blood-alcohol content (BAC) was 0.124. Responding to a tip provided by a retired police officer, police later viewed the surveillance tapes of a local convenience store, which showed that just prior to the accident, defendant bought a bottle of Mike's Hard Lemonade and returned to Loyer's Jeep.

¶ 15       Five character witnesses called on defendant's behalf–defendant's supervisor at Dwight Correctional Center, a correctional center coworker, a family friend, Loyer's twin sister, and Loyer's mother–testified generally about defendant's exceptional work ethic, willingness to assist others, and overwhelming remorse over Loyer's death. Loyer's twin sister and mother added that they held no animosity toward defendant because Loyer's death was a tragic accident.

¶ 16                                     2. *Closing Arguments*
¶ 17       The parties' closing arguments concentrated on section 11-501(d)(2)(G) of the Illinois Vehicle Code (625 ILCS 5/11-501(d)(2)(G) (West 2010)), which allows the trial court to impose a term of probation for an aggravated DUI conviction if "extraordinary circumstances exist." The State argued that extraordinary circumstances did not exist and asked the court to impose a six-year prison sentence. Defendant requested that the court impose a probationary term, emphasizing (1) his exemplary performance as a corrections officer and (2) the level of empathy and understanding exhibited by Loyer's family as factors that constituted such extraordinary circumstances.

¶ 18                              3. *The Trial Court's Judgment*

¶ 19          After a short recess, the trial court found as follows:

"[The court] certainly recognize[s] that [defendant is] a great neighbor, a very strong, hard worker. You're a good person. A bad thing happened. But in [the court's] mind when [the court is] thinking of extraordinary mitigating circumstances, *** there was another option that night; and the other option was take the keys from [Loyer] and call both of you a ride home.

\* \* \*

And [the court] understand[s] the victim's position. [The court] understand[s] the family's position. [The court is] glad that [defendant has] that support. But when [the court] consider[s] protection of the public and the message that it sends to the public, *** unfortunately we have a lot of good people in this community that makes mistakes. It happens. They make mistakes.

*** Does that rise to the level of extraordinary mitigating circumstances? [The court does not] think so. [The court does not] know what would. But in [the court's] mind, this does not. Had the legislature intended a situation like this to be probation eligible[, the court] think[s] there would be a way to do that; but here [the court does] not believe that the circumstances rise to the level of *** extraordinary, mitigating circumstances.

*** Even though the incident is different than a lot of DUI's, it's the same as every DUI. [Defendant] made a decision to drive when [he] shouldn't have; and unfortunately nobody can take it back; and [the court] know[s] that you want to take it back; but you can't; and [the court's] job is now to punish you for that; and [the court has] taken into consideration everything that [the court has] heard; but [the court does] think that under this circumstance these are not extraordinary mitigating circumstances."

Thereafter, the court imposed concurrent sentences of three years on both counts.

¶ 20          This appeal followed.


¶ 21                                   II. ANALYSIS

¶ 22                              A. Defendant's Convictions

¶ 23          Defendant argues that his convictions violated the one-act, one-crime doctrine. Specifically, defendant contends that this court should vacate his reckless homicide conviction because it was based on the same physical act as his aggravated DUI conviction. We agree.


¶ 24                      1. *The One-Act, One-Crime Doctrine*

¶ 25          In *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977), the supreme court articulated the one-act, one-crime doctrine, as follows:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent

sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."

Under *King*, "[m]ultiple convictions are improper if they are based on precisely the same physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996). Whether multiple convictions violate the one-act, one-crime doctrine presents a question of law that we review *de novo*. *People v. Shines*, 2015 IL App (1st) 121070, ¶ 44.

¶ 26                              2. *The Plain-Error Doctrine*

¶ 27    Defendant acknowledges the forfeiture of his one-act, one-crime claim by failing to properly preserve it for our review, but he nonetheless urges this court to excuse his forfeiture and consider his claim under the plain-error doctrine.

¶ 28    "To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion." *People v. Thompson*, 238 Ill. 2d 598, 611, 939 N.E.2d 403, 412 (2010). Failure to do so results in the forfeiture of that claim on appeal. *Id.* at 612, 939 N.E.2d at 412. A defendant can avoid the harsh consequences of forfeiture under the plain-error doctrine. *Id.* at 613, 939 N.E.2d at 413.

¶ 29    The plain-error doctrine permits a reviewing court to reach a forfeited error affecting substantial rights in the following two circumstances: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

¶ 30    As a matter of convention, reviewing courts *typically* undertake plain-error analysis by first determining whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1059 (2010). See also *People v. Bowens*, 407 Ill. App. 3d 1094, 1108, 943 N.E.2d 1249, 1264 (2011) (where this court held that "the usual first step in plain-error analysis is to determine whether any error occurred"). "If error is found, the court then proceeds to consider whether either of the [aforementioned] two prongs of the plain-error doctrine have been satisfied." *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. In this case, " 'an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain[-]error rule.' " *People v. Artis*, 232 Ill. 2d 156, 167-68, 902 N.E.2d 677, 684 (2009) (quoting *People v. Harvey*, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004)). Therefore, we will consider defendant's claim under the plain-error doctrine.

¶ 31                          3. *Defendant's One-Act, One-Crime Claim*

¶ 32    Defendant asserts that this court should vacate his reckless homicide conviction because it was based on the same physical act as his aggravated DUI conviction–namely, that at the moment of Loyer's death he drove while intoxicated.

¶ 33    In support of that assertion, defendant relies on *People v. Latto*, 304 Ill. App. 3d 791, 710 N.E.2d 72 (1999). In *Latto*, the defendant was driving southbound when his car crossed the center lane of traffic and struck a car travelling northbound. *Id.* at 794, 710 N.E.2d at 75. The impact seriously injured the driver and killed the passenger of the northbound car. *Id.* at 793, 710 N.E.2d at 75. Shortly after the accident, the responding officer noticed that the defendant's behavior indicated impairment. *Id.* at 795, 710 N.E.2d at 76. Subsequent testing revealed that the defendant had a 0.074 BAC and traces of the narcotic pain reliever Vicodin in his system. *Id.* Following a bench trial, the trial court found defendant guilty of two counts of (1) reckless homicide and (2) aggravated DUI. *Id.* at 794, 710 N.E.2d at 75. The court then sentenced defendant to a single five-year term for reckless homicide and three concurrent nine-year terms of imprisonment on his remaining convictions. *Id.*

¶ 34    On appeal, the appellate court concluded that the trial court's sentence did not conform to the one-act, one-crime doctrine announced in *King*. Specifically, the appellate court stated, as follows:

> "Here, it is apparent that count II [(reckless homicide)], alleging defendant drove his vehicle 'while under the influence of alcohol to a degree which rendered him incapable of safely driving' causing the death of [the passenger], and count VII [(aggravated DUI)], alleging defendant drove his vehicle 'while under the influence of alcohol, and he was involved in a motor vehicle accident that resulted in great bodily harm to [the passenger],' were based on the same acts: defendant's operation of his vehicle which resulted in [the passenger's] death. Accordingly, only one conviction and sentence should stand." *Id.* at 806-07, 710 N.E.2d at 83-84.

Thereafter, the court vacated the defendant's conviction and sentence on count VII (aggravated DUI), finding that it was the less serious offense. See *Artis*, 232 Ill. 2d at 170, 902 N.E.2d at 686 ("[U]nder the one-act, one-crime doctrine, sentence should be imposed on the more serious offense and the less serious offense should be vacated.").

¶ 35    The State attempts to distinguish *Latto* by claiming that defendant misstates the trial court's ruling in that case. Specifically, the State posits that the *Latto* court dismissed the defendant's aggravated DUI conviction as a lesser included offense of his reckless homicide conviction. We do not agree with the State's characterization.

¶ 36    In *Latto*, the appellate court's ruling was clearly based on what it considered a violation of the one-act, one-crime doctrine. *Latto*, 304 Ill. App. 3d at 806-07, 710 N.E.2d at 83-84. After making that determination, the *Latto* court stated, alternatively, that "[e]ven were we to determine that the convictions for counts II and VII were based upon multiple acts, [the] defendant's conviction for aggravated DUI *** must be vacated as a lesser-included offence of reckless homicide." *Id.* at 807, 710 N.E.2d at 84.

¶ 37    As already noted, under *King*, the definition of an "act" is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45. The State responds that defendant's convictions were not based on the same physical act, but instead, were based on two separate acts. In this regard, the State contends that "the aggravated [DUI] conviction was based upon defendant's act of driving while intoxicated, while the reckless homicide conviction was based on his intoxication *and the additional act* of defendant 'turn[ing] *** at a speed which was greater than was reasonable and proper with regard to existing conditions.' " Simply stated, the State posits that the act of driving a car

while intoxicated is a separate and distinct act from turning a car at an excessive speed while intoxicated. We are not persuaded.

¶ 38 In this case, which we find analogous to *Latto*, we begin our analysis by noting that the offenses of aggravated DUI and reckless homicide the State charged against defendant pertained to Loyer's death on the night of September 11, 2011. Because causing the death of another was an indispensable element of defendant's convictions for aggravated DUI and reckless homicide, both offenses were completed at the exact same moment in time–namely, when Loyer died.

¶ 39 Narrowing our focus to the precise moment preceding that death, the only "overt or outward manifestation" that occurred was defendant's indefensible act of *driving* Loyer's yellow 2000 Jeep Wrangler recklessly and while intoxicated. It cannot be said that defendant committed two separate acts to cause Loyer's death. That sole physical act–that is, driving in such a manner that would cause death–constituted the basis for the State's charges and defendant's resulting convictions for aggravated DUI and reckless homicide, which we agree violated the clear intent of the one-act, one-crime doctrine. Accordingly, we vacate defendant's conviction and sentence for reckless homicide, which is the less serious offense, and remand with directions that the trial court correct defendant's sentencing order.

¶ 40 In so concluding, we clarify the following misperception defendant apparently has regarding a reviewing court's ability to reduce a sentence imposed by a trial court. Citing Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), defendant argues in the alternative that "[i]f this court should disagree with [defendant's one-act, one-crime] argument, then his three year sentence for count I should also be reduced to probation" due to his lack of criminal history and the extraordinary circumstances surrounding Loyer's death. However, "this court has no authority under *** Rule 615(b) [citation] to reduce a sentence of imprisonment to a sentence of probation." *People v. Bruer*, 335 Ill. App. 3d 422, 428, 780 N.E.2d 1128, 1132 (2002) (citing *People v. Bolyard*, 61 Ill. 2d 583, 588, 338 N.E.2d 168, 170 (1975) ("Rule 615 does not grant a reviewing court the authority to reduce a sentence of imprisonment to a sentence of probation.")).

¶ 41 B. Defendant's Sentence

¶ 42 Defendant argues that the trial court abused its discretion by failing to find extraordinary circumstances existed to impose a sentence of probation. We disagree.

¶ 43 A conviction for aggravated DUI is a Class 2 felony for which a trial court can impose a prison sentence of not less than 3 years but not more than 14 years, "unless the court determines that extraordinary circumstances exist and require probation." 625 ILCS 5/11-501(d)(2)(G) (West 2010). "The plain language of the statute creates the presumption that a convicted defendant shall serve a term of imprisonment." *People v. Hambrick*, 2012 IL App (3d) 110113, ¶ 21, 973 N.E.2d 1060.

¶ 44 "A trial court is given great deference when making sentencing decisions, and if a sentence falls within the statutory guidelines, it will not be disturbed on review unless the court abused its discretion and the sentence is manifestly disproportionate to the nature of the case." *People v. Grace*, 365 Ill. App. 3d 508, 512, 849 N.E.2d 1090, 1093-94 (2006). Absent an abuse of discretion, a trial court's sentence will not be disturbed on appeal merely because this court might have weighed the mitigating and aggravating factors differently. *Id*. at 512, 849 N.E.2d at 1094.

¶ 45    Defendant directs our attention to the (1) "circumstances surrounding" Loyer's death and (2) his character as a "hard-working member of society" as proof that extraordinary circumstances existed in this case to warrant a sentence of probation. However, the trial court properly considered those factors during defendant's August 2013 sentencing hearing, noting that those factors did not constitute extraordinary circumstances.

¶ 46    In this case, the trial court sentenced defendant to a three-year term of imprisonment for aggravated DUI based, in part, on its assessment that Loyer's death was entirely preventable in that defendant could have called for a cab instead of making a conscious decision to drive Loyer home while he was intoxicated. Despite defendant's claim to the contrary, we agree with the court's keen assessment that the circumstances surrounding Loyer's death began as most DUI cases begin–that is, with a person's knowing decision to drive drunk. In this regard, we reaffirm the following long-held stance of this court:

> "Illinois law does not prohibit drinking and driving; it prohibits drinking and driving *drunk*. There is a big difference between these two, and Illinois drivers are expected to understand that difference and conduct themselves accordingly. Thus, we agree with the trial court and the legislature that those who drive drunk must be on notice that, absent extraordinary circumstances, the penalty for depriving a person of her life as a result of drunk driving will be imprisonment.

> In so concluding, we acknowledge that defendant, in the aftermath of this terrible case, expressed his sincere sorrow and heartfelt regret for what has transpired as a result of his conduct. Nonetheless, this sorrow and regret come too late. In this regard, we reiterate our comments from *People v. Martin*, 289 Ill. App. 3d 367, 376-77, 682 N.E.2d 460, 466 (1997), in which this court stated the following:

>> 'DUI is not only deterrable, it is one of the most deterrable offenses because of the drinking required–and the time this drinking requires–before the drinker becomes drunk. Typically, the potential DUI defendant–sip by sip, swallow by swallow, drink by drink–becomes intoxicated with the full understanding and expectation that, at some point, he will get behind the steering wheel, drive drunk, and perhaps kill someone.' " (Emphasis in original.) *People v. Winningham*, 391 Ill. App. 3d 476, 486, 909 N.E.2d 363, 372 (2009).

¶ 47    Essentially, defendant requests that this court reweigh the aggravating and mitigating factors the trial court considered and substitute our judgment for that of the court. Given our highly deferential standard of review, however, we decline to do so. Instead, we conclude that the court's imposition of a statutory minimum prison sentence of three years for defendant's aggravated DUI conviction was (1) not an abuse of its discretion and (2) entirely reasonable.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we (1) affirm defendant's conviction and sentence on his aggravated DUI conviction, (2) vacate his conviction and sentence on his reckless homicide conviction, and (3) remand to the trial court with directions to correct defendant's sentencing order.

¶ 50    Affirmed in part and vacated in part; cause remanded with directions.