THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARRETT GAROFALO, Defendant-Appellant.

Second District   No. 2—87—1110

Opinion filed April 27, 1989.

Michael D. Ettinger, of Ettinger & Pechter, Ltd., of Oak Lawn (Barry S. Pechter, of counsel), for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Garrett Garofalo, was charged by indictment with reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)), driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), driving while license revoked (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a)), and failure to report an accident involving personal injury or death (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b)). Following a bench trial, defendant was found guilty on all four counts. Defendant filed a timely notice of appeal. We affirm.

On March 27, 1987, at approximately 1 a.m., Marc Cohen was hit by an automobile and killed. Shortly thereafter, Officer Kurt Rutz of the Vernon Hills police department saw a gray Thunderbird being driven with its right headlight out. The car was being driven erratically. Before Officer Rutz had a chance to investigate, he received a report of a man down in the roadway. Officer Rutz indicated that it was approximately 1.8 miles from where the Thunderbird was parked outside defendant's apartment to the scene of the accident. Officer Rutz never saw who was driving the Thunderbird.

Officer Rutz testified that he returned to the Thunderbird after investigating the report of the man down in the roadway. The Thunderbird was parked in front of the apartment building where defendant lived. He observed damage to the front side of the car. He also noticed bloodstains on the right front fender. Rutz then set up surveillance of the automobile. Around 2 a.m., a car drove up, and three individuals got out. These individuals were later identified as James Constantine, Mike Gienko, and Daniel Wells. Officer Rutz approached the three individuals and brought them into the police station for questioning. Rutz later found out that the Thunderbird belonged to defendant's family and that defendant used the car to go to and from work.

Officer Rutz, along with two other officers, went to defendant's apartment to question defendant. However, the officers were unable to gain access to defendant's apartment, despite repeated knockings and telephone calls to the apartment. Around 6 a.m., Ralph Garofalo, defendant's father, came to the apartment and began to knock on the

door. Defendant answered the door and was subsequently issued three traffic citations. Defendant stated, "You're going to have a hard time proving that," after receiving a citation for DUI.

Defendant retrieved his car keys from the kitchen table and was taken to the Vernon Hills police department for questioning. It was later determined that the car keys fit the gray Thunderbird's ignition. The questioning session was tape-recorded, and the tape was admitted as evidence during the trial. Defendant stated that he had been drinking at a bar for a few hours, and then left the bar to go home. He did not know who drove the car home, which route the car took, or why there was damage to the front of his car. Defendant did not testify at trial.

James Constantine, a friend of defendant, testified at the trial. Constantine testified that he, along with two other friends, arrived at the bar around 1:15 a.m. Constantine stated that he saw defendant at the bar. It was his opinion that defendant was drunk. Constantine talked to defendant for a short period of time, and then defendant left the bar. Constantine followed defendant out of the bar in an attempt to prevent defendant from driving the car. Defendant refused to give his car keys to Constantine, stating, "I am driving." Constantine attempted to get the keys from defendant, but was unsuccessful. However, Constantine did manage to prevent defendant from entering the driver's side of the vehicle. Defendant went around the car and got in on the passenger's side. Constantine walked back towards the bar, whereupon he noticed a woman walking towards defendant's automobile. Constantine stated that this woman offered to drive defendant home several times when defendant and the woman were inside the bar. Constantine further stated that the car stayed in the parking lot for 15 to 20 minutes and then left. He did not see who was driving the car when it left the parking lot.

Constantine stated that he, along with two friends, left the bar around 1:45 a.m. As they drove home, Constantine saw police cars blocking the road. Constantine stated that he became concerned about defendant and decided to see if defendant made it home safely. Constantine testified that he drove his car to defendant's Thunderbird, which was parked in front of the apartment building where defendant resided. Constantine observed the damage to the right front of the Thunderbird. It was at this time that Officer Rutz approached and questioned the three men.

The other two men in the car with Constantine, Mike Gienko and Daniel Wells, also testified at the trial. It was the opinion of each of them that defendant was intoxicated when he was at the bar. Both of-

fered to drive defendant home, but defendant refused. However, neither man saw who actually drove the gray Thunderbird out of the bar's parking lot.

Officer Merritt McPhee of the Vernon Hills police department also testified. Officer McPhee stated that he was called to the accident scene to locate and collect physical evidence. Officer McPhee recovered gray paint chips and pieces of gray plastic near the body of the victim. The paint chips and plastic were apparently from defendant's Thunderbird. McPhee also noticed faint tire and foot impressions in the gravel on the side of the road. However, no attempt to match the impressions was made.

After closing arguments, the trial judge made the following findings:

> "I take it it's obvious that I have no doubt defendant was under the influence of alcohol to a degree which rendered him incapable of safely driving, and that Mark Cohn [sic] was killed by an automobile, the automobile being the one which the defendant had been driving, and the only question in my mind—I take it the intoxication is recklessness, and Mr. Cohn [sic] is dead because of the reckless operation of an automobile—and the only question this Court has before it is whether or not the circumstances are such that I can draw inferences from the facts in evidence which would lead me to conclude beyond a reasonable doubt that the defendant was driving that automobile. I think they do.
>
> I think the hypothesis or theory of innocence that this mystery lady who had apparently been rebuffed in her efforts to—everyone was rebuffed in their efforts to drive this defendant home somehow, you know—we don't know where she came from. She wasn't seen by Mr. Constantine who got in a physical confrontation over who was going to drive the automobile. I think the theory that somehow she drove the defendant home, parked the car at his apartment complex and presumably disappeared or walked home is not a reasonable theory of innocence *** ."

Defendant was sentenced to four years' imprisonment for reckless homicide, three years for DUI, three years for failure to report an accident involving personal injury or death, and 364 days for driving with his driver's license suspended. All sentences were to run concurrently. Defendant filed a timely notice of appeal.

On appeal, defendant contends that: (1) defendant was not proved guilty beyond a reasonable doubt; (2) defendant was denied due pro-

cess of law when the State was not required to prove every element of the reckless homicide offense beyond a reasonable doubt; (3) the trial court erred in admitting prior acts of defendant's driving; and (4) the trial court abused its discretion in sentencing defendant.

■ Defendant first contends that the State did not prove him guilty beyond a reasonable doubt. In a criminal trial, the prosecution has the burden of proving all elements of the offense beyond a reasonable doubt. (*People v. Lynch* (1987), 151 Ill. App. 3d 987, 990.) We will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Bartlett* (1988), 175 Ill. App. 3d 686, 691.

■ Defendant argues that his conviction must be reversed because the State presented no evidence that defendant was actually driving the car or even behind the wheel of the car on the night in question. Defendant contends, and the State agrees, that defendant's convictions were based solely on circumstantial evidence. It is well established that the commission of an offense may be established entirely by circumstantial evidence. (*People v. Williams* (1977), 66 Ill. 2d 478, 484; *People v. Marino* (1970), 44 Ill. 2d 562, 580; *People v. Hanna* (1983), 120 Ill. App. 3d 602, 612.) However, in order to sustain defendant's convictions, his guilt must be so thoroughly established as to exclude every reasonable hypothesis of innocence. *People v. Branion* (1970), 47 Ill. 2d 70, 77, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213; *People v. Schulz* (1987), 154 Ill. App. 3d 358, 373.

Defendant contends that the State's own witnesses presented a reasonable hypothesis of defendant's innocence. Specifically, defendant points out that James Constantine testified that a woman offered to drive defendant home several times, and the same woman was seen walking towards defendant when Constantine walked back to the bar. Defendant argues that a reasonable hypothesis exists in that it could have been the woman who actually drove the Thunderbird that killed Marc Cohen. Defendant states that the State failed to exclude this reasonable hypothesis, and as such, defendant's conviction must be reversed.

The State contends that the circumstantial evidence was more than sufficient to prove defendant guilty beyond a reasonable doubt. The State points out that defendant refused to allow any of his friends to drive him home. He also affirmatively stated that he would drive himself home. The State also discounts defendant's theory that a woman who met defendant at the bar may have been the one who actually drove the automobile. The State points out that Constantine

never mentioned the existence of this woman at any time before the trial. As a final point, the State notes that defendant was in possession of the car keys to the Thunderbird when the police contacted him at 6 a.m. at his apartment.

■ We do not find a reasonable hypothesis arising from the evidence in this record which is consistent with defendant's innocence. While several witnesses testified that a woman offered to drive defendant home, there was no evidence that defendant ever accepted the offer. In addition, none of the witnesses actually saw this woman drive the vehicle, or even get into the automobile. The record indicates that defendant was very adamant about driving his car home. He refused offers from each of his friends at the bar to drive him home. Defendant physically attacked Constantine when he would not let defendant into the driver's side of the automobile. Furthermore, defendant never informed the police that some unknown woman actually drove the car. We believe the evidence of defendant's driving, although circumstantial, was sufficient to exclude every reasonable hypothesis of his innocence.

■ Defendant next contends that the State was not required to prove every element of the reckless homicide offense beyond a reasonable doubt, thus violating defendant's due process rights. Specifically, defendant argues that section 9—3(b) of the Criminal Code of 1961 creates a mandatory conclusive presumption, or a burden-shifting presumption, such that the State was not required to prove each element of the offense. Section 9—3(b) provides:

> "In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act." Ill. Rev. Stat. 1987, ch. 38, par. 9—3(b).

The Illinois Supreme Court has ruled that a conviction for DUI does not conclusively establish that the person also drove recklessly. In *People v. Jackson* (1987), 118 Ill. 2d 179, the court stated that "such a conviction is *prima facie* evidence, but it is *not* conclusive." (Emphasis added.) (118 Ill. 2d at 191.) The court noted that even though a person may be operating a vehicle under the influence of alcohol, the person may not be driving recklessly. (118 Ill. 2d at 192.) We find the reasoning in *Jackson* to be controlling in the case at bar. Thus, we do not believe that section 9—3(b) creates a mandatory presumption or that it improperly shifts the burden of proof to defendant.

■ Defendant also asserts that the trial court improperly admitted evidence of prior acts of defendant's driving. Defendant argues

that the following testimony was irrelevant and prejudicial:

"Q. [Assistant State's Attorney] Now, prior to that night had you ever seen that car before?

A. [James Constantine] Sure.

* * *

Q. Had you ever seen the defendant in that car before?

A. Yes.

Q. How many times?

A. A lot of times. Twenty.

Q. What was he doing when he was in the car before?

[Defense counsel] Objection. If we are going to get into the fact maybe the defendant was driving that car on prior occasions, certainly could not prove anything at this time.

[Assistant State's Attorney]. It's probative.

THE COURT: He can answer.

* * *

Q. What was the defendant doing on these other occasions when you saw him inside this same car?

A. I believe driving to work or back from work."

Defendant contends that the evidence that defendant allegedly drove the Thunderbird on 20 prior occasions led the trier of fact to believe that defendant drove the vehicle on the night of the accident. We disagree. It is clear from a reading of the record that the evidence was considered only for the limited purpose of connecting defendant with the automobile. During the hearing on defendant's post-trial motion, the trial court stated:

"I think the evidence that the Defendant on some other occasion was driving this car—it never occurred to me that this was an attempt to show other illegal acts."

Furthermore, there was no evidence to show that any of the prior acts of driving involved any criminal activity. We agree with the trial court and find that such evidence was proper to connect defendant to the automobile and was not used to show defendant had a propensity to commit criminal acts.

Defendant last contends that the trial court abused its discretion in sentencing him to four years' imprisonment. In particular, defendant notes that he should have been given probation and ordered to enter a treatment program for his alcoholism. In addition, defendant points out that he was 23 years old, had no prior felony convictions, resided with his parents, and was employed full time at the time of the offense.

The State responds by noting that defendant was previously con-

victed of two separate DUIs, one count of reckless driving, and had six speeding tickets. In addition, defendant attended a DUI school two previous times in an attempt to rehabilitate himself. The State concludes by noting that defendant's sentence was similar to other sentences affirmed on appeal for similar crimes. See *People v. Leonora* (1985), 133 Ill. App. 3d 74 (three-year sentence for reckless homicide); *People v. Rohman* (1983), 117 Ill. App. 3d 55 (three years' imprisonment for reckless homicide and 364 days for DUI, each sentence to run concurrently).

The trial court considered factors in mitigation and aggravation and concluded:

"[M]y problem is that this is not his first offense.

He was placed on supervision for the same offense in '83. He then had a chance to rehabilitate himself. He was placed on conditional discharge for the same offense in 1984. And he had an opportunity to rehabilitate himself. \*\*\*

He, notwithstanding those convictions, continued to drive without a license. \*\*\*

Rehabilitation, I think, requires the Defendant to want to be rehabilitated. And he has had these years with this problem and he has done nothing about it. And it is a tragedy. \*\*\* I think that I have considered all the factors in aggravation and mitigation, including the fact that his license is revoked; he continues to drive, and the testimony of the officer that says he tried to lie about his identity back in November.

\* \* \*

And I think it would be a mockery of justice—and considering the factors in aggravation and mitigation, I think it would disparage the seriousness of this offense to sentence the Defendant to anything other than the Department of Corrections."

■ The imposition of a criminal sentence is a matter of judicial discretion, and the sentence may not be altered upon review unless there is an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Katsigiannis* (1988), 171 Ill. App. 3d 1090, 1102.) The trial judge is normally in the best position to determine the appropriate sentence based on such diverse factors as the defendant's age, credibility, moral character, social environment, demeanor, and habits. (*Perruquet*, 68 Ill. 2d at 154.) The trial judge is certainly in the best position to consider the unique circumstances of each individual case. Thus, the trial court's decision with respect to sentencing is entitled to great weight and deference. *People v. Younger* (1986), 112 Ill. 2d 422, 427-28.

After examining the factors in aggravation and mitigation, we cannot say that the court's sentence was excessive and an abuse of discretion. Accordingly, for the above-stated reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH and WOODWARD, JJ., concur.