(No. 71461.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GEORGE SMITH, Appellee.

*Opinion filed June 9, 1992.—Rehearing denied October 5, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Noreen M. Daly, Assistant State's Attorneys, of counsel), for the People.

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose and Marilyn Martin, of counsel), for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant was found guilty of involuntary manslaughter (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) in the shooting death of his wife, Carolyn Smith. The appellate court, with one justice dissenting, reversed the conviction (208 Ill. App. 3d 538). We granted the State's petition for leave to appeal (134 Ill. 2d R. 315).

On the afternoon of October 8, 1986, the defendant and his wife were at a bowling alley in Countryside, Illi-

nois. Later, the couple joined a group of friends in the bar. At trial, police officers testified that the defendant told them he drank at least three "seven and sevens" while bowling and five more at the bar. The defendant testified that he admitted to police that he had been drinking that evening, but denied telling them how many drinks he had. Three friends who spent part of the evening with the Smiths testified that they did not believe the defendant was intoxicated. Defendant's friends all left the bar before he did, and none could say how much he had to drink.

Defendant and the victim left the bowling alley at about 11 p.m. At home, they decided to pack a few things, including some guns, for their upcoming move to a new home. The defendant testified that he got his wife's .38-caliber handgun out of her dresser, and took it into the living room for her to unload. He said that she had left the gun in a cocked position in the past, because she had trouble shooting it otherwise. On this occasion, however, defendant did not notice whether the gun was cocked because he did not look at it as he walked from the bedroom into the living room. The defendant, a past member of the National Rifle Association who had fired "many different guns a thousand times," admitted that when a gun is cocked, one need just touch the trigger and it will fire. A gun is "very dangerous" in that position, he said.

Carolyn had trouble unloading the revolver, so the defendant offered to unload it for her. Defendant said his wife was sitting in a chair and he knelt down beside her. While he was trying to release the latch to remove the shells, the gun "just went off." Defendant denied having his finger on the trigger. A firearms expert testified that the handgun had an internal safety called a "hammer block," meaning that the gun could only be fired by pulling the trigger.

One of defendant's neighbors testified that he heard a gunshot at 12:14 a.m. on the morning of the shooting. The neighbor heard a man scream and then heard crying. Paramedics testified that the defendant reported the shooting at 12:31 a.m., and that his speech as it came over the loudspeaker was slurred.

When paramedics arrived at the scene, they found Carolyn sitting in a chair, with blood on her face, blouse and hands. Her hands were crossed on her lap and her feet were crossed at the ankles. The defendant told the paramedics that his wife had shot herself. While paramedics were attempting to put a tube in Carolyn's mouth, defendant grabbed it away. Defendant said he was afraid they were hurting her.

Police officers testified that when they tried to subdue the defendant, he became violent. The defendant struggled, shouted profanities, and had to be handcuffed. Initially, he would not answer any questions, and only said that the shooting was an accident. Later, when police asked the defendant where the weapon was, he told them he had thrown it under the couch because he was afraid of it. Countryside Police Officer Battaglia said he smelled a strong odor of alcohol on defendant's breath, and that the defendant's voice was loud, his speech was slurred and his eyes were bloodshot. Officer Schwab testified similarly, and both men said they believed the defendant was intoxicated.

Officer Frank Bozzi, who interviewed the defendant at the police station, said he found defendant sitting on the floor of a holding room in the early morning hours of October 10. The defendant, who had been in the room for about five minutes, had urinated in his pants. When Bozzi informed the defendant that his wife had died, the defendant began pounding his fists on a table and hitting his head on the floor. Bozzi then terminated the interview because of the defendant's emotional state.

At the close of the evidence, the jury found the defendant guilty of involuntary manslaughter. The trial judge sentenced him to one year of periodic imprisonment and 30 months' probation with one year of intensive supervision.

The appellate court majority held that, under the circumstances of this case, the State must prove beyond a reasonable doubt that the defendant was intoxicated in order to sustain his conviction for involuntary manslaughter. (208 Ill. App. 3d at 544.) The court found that the State had not met this burden, and concluded that evidence of the shooting, in and of itself, was insufficient to support the jury's verdict. 208 Ill. App. 3d at 546, 549.

On appeal, the State argues that the appellate court erred concerning the prosecution's burden of proof and in finding that the evidence was insufficient to support the defendant's conviction. For the reasons set forth below, we agree and therefore reverse.

Central to the appellate court's ruling regarding the sufficiency of intoxication evidence in this case was its belief that "[t]he particular acts relied upon to sustain a charge of recklessness are a part of the nature and elements of the offense and must be proved beyond a reasonable doubt." (208 Ill. App. 3d at 544, citing *People v. Chambers* (1972), 8 Ill. App. 3d 430.) Initially, we note that recklessness in itself is not a criminal offense. Rather, it is a mental state that serves as an element of an offense, such as reckless homicide or involuntary manslaughter. Intoxication is not an element of either offense.

The four elements of involuntary manslaughter are: (1) the defendant must have done an act, which unintentionally (2) caused the death of another and (3) the act, which was such as was likely to cause death or great bodily harm, was (4) performed recklessly. (Ill. Rev. Stat.

1987, ch. 38, par. 9—3(a).) Recklessness is defined as a conscious disregard of a substantial and unjustifiable risk constituting a "gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1987, ch. 38, par. 4—6.

In *Chambers*, the appellate court stated that "the particular acts relied upon to sustain a charge of reckless driving are part of the nature and elements of the offense," and therefore, if the State presented evidence of the defendant's drinking, it must prove intoxication beyond a reasonable doubt. (*Chambers*, 8 Ill. App. 3d at 433.) In support of that proposition, the *Chambers* court cited *People v. Coolidge* (1970), 124 Ill. App. 2d 479, 483-84. *Coolidge*, in turn, cited *People v. Griffin* (1967), 36 Ill. 2d 430, in which this court stated: "Unless a defendant is advised of the particular acts relied upon to sustain a charge of reckless driving, he is not advised of the 'nature and elements' of the offense, and he is not afforded the full protection against double jeopardy contemplated by the constitution." *Griffin*, 36 Ill. 2d at 433.

*Chambers* and *Coolidge*, which involved charges of reckless homicide and driving under the influence of alcohol, thus confused the sufficiency of an indictment for double jeopardy purposes with the elements of an offense which must be proved beyond a reasonable doubt at trial. Intoxication is not an element of reckless homicide, which has the same elements as involuntary manslaughter, except that death must be caused by the driving of a motor vehicle. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a).) Just as it is possible to commit involuntary manslaughter without being intoxicated (see, *e.g.*, *People v. Zahner* (1979), 77 Ill. App. 3d 706 (death resulting from gun play)), the State may sustain a conviction for reckless homicide even though the defendant is acquitted of driving under the influence (see *People v. Wilson* (1991), 143 Ill. 2d 236).

Accordingly, to the extent that *Chambers* and *Coolidge* may be read to imply that intoxication is an element of reckless homicide or involuntary manslaughter, they are overruled. It is recklessness, not intoxication or any other fact underlying an inference of this mental state, that the State must prove beyond a reasonable doubt.

Recklessness may be inferred from all the facts and circumstances in the record, viewed as a whole, and may be established by evidence regarding the physical condition of the defendant. (*Wilson*, 143 Ill. 2d at 246.) Evidence of intoxication, therefore, while not an element of the charged offense, is probative on the issue of recklessness. (*People v. Sleboda* (1988), 166 Ill. App. 3d 42, 55; *People v. Davis* (1982), 105 Ill. App. 3d 129, 133, citing *People v. Miller* (1979), 75 Ill. App. 3d 775, 777-78.) If the State introduces evidence of intoxication in an involuntary manslaughter or reckless homicide case, it need only present some evidence of intoxication from which, along with other circumstances, recklessness may be inferred. *People v. Gosse* (1983), 119 Ill. App. 3d 733, 739; *People v. Bolar* (1982), 109 Ill. App. 3d 384, 392.

Whether recklessness has been proved is an issue to be decided by the trier of fact. (*Wilson*, 143 Ill. 2d at 246.) The critical inquiry when reviewing the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Wilson*, 143 Ill. 2d at 246.) A reviewing court must not substitute its judgment for that of the jury unless the inference of a mental state accepted by the jury was inherently impossible or unreasonable. *Zahner*, 77 Ill. App. 3d at 707-08.

Applying this standard, we find that the evidence presented in this case, taken as whole, was sufficient to

establish beyond a reasonable doubt that defendant's acts were reckless. Initially, we note certain circumstances surrounding Carolyn Smith's death. The defendant waited more than 15 minutes after the shooting before calling paramedics. When they arrived, he told them that his wife had shot herself. The fact that the victim's hands and feet were crossed was evidence from which the jury could conclude that the defendant had posed her body.

Further, the State presented credible evidence not only that defendant had been drinking on the night of the shooting, but that he was drunk. Two police officers testified that defendant was under the influence of alcohol. The fact that defendant's friends testified that he was not intoxicated does not mean that the jury could not find him guilty of involuntary manslaughter beyond a reasonable doubt. Where there is conflicting evidence of intoxication, it is the jury's function to determine the credibility of witnesses and the weight accorded their testimony. (*People v. Frantz* (1986), 150 Ill. App. 3d 296, 302; *People v. Leonora* (1985), 133 Ill. App. 3d 74, 86.) A reviewing court must not, as the appellate court did in this case, invade the province of the jury by hypothesizing other possible explanations for the defendant's appearance and behavior. (See 208 Ill. App. 3d at 546 (the defendant's "slurred speech, bloodshot eyes and erratic behavior are readily explainable as the effects of severe emotional stress").) Such determinations are for the jury.

Moreover, defendant himself testified that he knew the gun was loaded and might be cocked. Still, without looking at the gun, he tried to unload it while kneeling next to his wife. A reasonable person could fairly conclude from this evidence that defendant acted with a conscious disregard of a substantial risk that he would cause great bodily harm or death. We therefore find

this evidence sufficient to support defendant's conviction for involuntary manslaughter. Accordingly, we reverse the decision of the appellate court.

Given the facts of this case, we need not address the State's argument that, even without evidence of intoxication, the defendant's handling of a loaded weapon and other circumstances surrounding his wife's death were sufficiently indicative of recklessness to support a conviction for involuntary manslaughter. The defendant, however, raised three additional arguments in the appellate court: (1) he was denied his constitutional right to a fair trial because the State's opening statement distorted the evidence and prejudiced the jury; (2) the trial court erred in allowing a police officer to testify to a prior inconsistent statement; and (3) the trial court erred in denying his motion to suppress evidence of the gun found at the scene. Because the appellate court found that the defendant had not been proven guilty beyond a reasonable doubt, it did not address these issues. Neither the defendant nor the State has argued them before this court. We therefore remand to the appellate court with directions to consider and rule upon defendant's additional assignments of error.

*Reversed and remanded,*
*with directions.*