THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY PESHAK, Defendant-Appellant.

First District (5th Division)    No. 1—01—2455

Opinion filed September 20, 2002.

1054

GREIMAN, J., dissenting.

Paul DeLuca, of Oakbrook Terrace, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, defendant Gary Peshak was convicted of three counts of reckless homicide and two counts of aggravated driving under the influence of alcohol, resulting from the death of Winceta Skrzypek, who was struck and killed by a truck driven by defendant. He was sentenced to a four-year prison term on the reckless homicide convictions and a concurrent three-year term on the aggravated driving under the influence of alcohol convictions. On appeal, defendant contends: (1) that the reckless homicide statute under which he was convicted is unconstitutional; (2) that the State failed to prove him guilty beyond a reasonable doubt; (3) that the trial court erred in not *sua sponte* providing an interpreter for a witness for the prosecution; (4) that the trial court erred when it allowed a State witness to testify in violation of Supreme Court Rule 412 (188 Ill. 2d R. 412) regarding statements defendant allegedly made; and (5) that his sentence is improper. For the reasons set forth below, we affirm the judgment of the trial court.

BACKGROUND

Ambalal Patel testified that about 2:15 p.m. on July 17, 2000, he

was in Mount Prospect heading west on Golf Road in the curbside lane at about 30 miles per hour. Prior to reaching Elmhurst Road, Patel saw a woman on the north side of Golf Road attempting to cross it heading southbound. In response, he slowed down his vehicle. While the woman was crossing the lane to the left of the one Patel was in, he saw a red truck strike her. Patel did not see the truck brake prior to striking the woman and did not see the driver of the vehicle that struck her.

On cross-examination, Patel testified that the woman who had been struck was not looking where she was crossing and was about 10 to 15 yards west of Country Lane Road, which was the nearest intersection. Patel stated that the woman was "running a little fast" at the time she was struck. Patel also stated that the vehicle in question was traveling around 30 or 40 miles per hour when it hit her and that it had "moved to its left side" before hitting the victim. Patel admitted telling Mount Prospect police shortly after the accident that the driver of the truck had tried to avoid hitting the victim.

Terry Thomas testified that at the time in question, he was in the front passenger seat of a minivan going westbound on Golf Road just east of Elmhurst Road when he saw a woman crossing the street. When the woman was almost to the center median, a red truck driven by defendant passed in the lane left of the lane Thomas was in. The truck then hit the woman, who was carried on the truck's hood, before falling off it when the truck came to rest on the center median. Thomas stated that when the woman saw the truck approaching, she attempted to get out of its path by running. He was unsure whether defendant attempted to brake the truck before hitting the victim. Following the accident, Jeffrey Easton, the driver of the vehicle Thomas was riding in, got out and tended to the victim.

On cross-examination, Thomas testified that defendant was nervous following the accident, but that he did not notice anything unusual about defendant's behavior. Thomas did not recall whether defendant was walking around the scene after the accident and stated that there was nothing unusual about defendant's speech at the time. Thomas stated that the victim was "nowhere near" the corner when she was struck and that he was unsure whether defendant swerved before striking her. According to Thomas, due to the speed defendant's truck was traveling, he was unable to slow down prior to hitting the victim.

Officer Addante of the Mount Prospect police department testified that about 2:20 p.m. on the day in issue, he arrived at the accident scene where he saw Winceta Skrzypek lying in the roadway. Addante checked the victim's pulse and breathing, and she was unresponsive to

both. Addante then approached three men who were standing on the side of the road to determine who was driving the vehicle that struck Skrzypek. Addante testified that defendant was driving the vehicle that struck the victim and that when Addante arrived on the scene, it was resting on the median with flat tires.

On cross-examination, Addante stated that when he spoke with defendant following the accident, he was within three or four feet of him. From that distance, Addante did not notice the smell of alcohol on defendant's breath and did not notice anything unusual about the way he spoke. Addante testified that defendant did not have any problems standing and admitted that nothing regarding defendant's demeanor brought attention to the fact that the accident may have involved alcohol.

Officer Justin Beach testified that shortly after 3 p.m. he arrived at the accident scene. After speaking with Addante, Beach learned that defendant was the driver of the vehicle that had struck Skrzypek. Beach stated that from 10 to 15 feet away, he noticed that defendant had bloodshot eyes. After defendant was escorted to a squad car, Beach was informed by Sergeant John Dahlberg that when Dahlberg had opened the door of the car, he smelled a strong odor of alcohol inside the vehicle and, upon speaking with defendant, Dahlberg smelled a strong odor of alcohol on defendant's breath. Beach then asked, and defendant agreed, to complete a series of field sobriety tests.

Beach testified that when defendant recited the alphabet beginning with the letter "A," he spoke "very rapidly" until he reached the letter "T," then paused for about three seconds and successfully finished the alphabet. While defendant was performing this test, Beach could smell a "strong odor" of alcohol on his breath. When defendant took the same test a second time, he successfully completed it.

Defendant was also given the "one-legged stand" test and the "walk and turn" test. Beach stated that these tests were administered on a flat surface and that defendant failed both of them. Based upon defendant's performance on these tests, Beach concluded that defendant was unfit to be operating a motor vehicle.

On cross-examination, Beach testified that when he arrived at the scene and saw defendant, he was standing and did not appear to have a problem maintaining his balance. Beach stated that he did not smell alcohol on defendant's breath at the time he placed him in the squad car prior to administering the sobriety tests. Beach further stated that he did not notice anything about defendant which would indicate that he had been driving under the influence of alcohol until he was advised by Dahlberg that defendant smelled of alcohol. Regarding the "one-legged stand" test, Beach testified that although defendant success-

fully counted to 30 and did not put his foot down, defendant was swaying while the test was being administered. On the "walk and turn" test, defendant took each of the nine requested steps, but swayed when he turned.

Ruthe Howes, an attorney with the Cook County State's Attorney's office, testified that she met with defendant during the evening of July 17, 2000. Defendant told her that on the day of the accident, he had been working at a construction site in Lake Forest. On his way to work that morning, defendant had purchased 1.75 liters of vodka. At the construction site, defendant had a "couple" of drinks consisting of vodka and 7-up before eating lunch. After lunch, defendant had "a couple of drinks in the afternoon" before leaving for home. Howes stated that defendant told her that as he was about to get into the lane on Golf Road that turns left onto Elmhurst Road, his vehicle struck the victim. Defendant told Howes that he did not see the victim until he hit her and that as soon as he realized he had hit something, he stopped the vehicle. Howes further stated that she was informed by defendant that, at the time of the accident, he was traveling near the posted speed limit of 40 miles per hour and he had swerved his truck in an attempt to avoid hitting the victim. Howes also testified that about 6:25 p.m. the day of the accident, she went to the accident scene. There, she saw a bottle of vodka in the cab of defendant's truck, which had a "strong odor" of vodka inside it.

On cross-examination, Howes admitted to not including anything about the smell of alcohol in defendant's truck in the notes she had prepared in connection to the case. On redirect, Howes testified without objection that defendant told her that he would take responsibility for driving under the influence of alcohol, but he would not take responsibility for the reckless homicide. On recross, Howes admitted that defendant's statements with respect to taking responsibility on the charges were also not included in her notes.

Officer Richard Tracy, an evidence technician with the Mount Prospect police department, testified that a cup, which contained about a teaspoon of liquid, was recovered from the console of defendant's truck. A bottle of "Skol" vodka, with about three-quarters of its contents gone, was also recovered from defendant's vehicle. Tracy testified that there were no skid marks from defendant's truck present at the scene.

Sergeant John Dahlberg, who testified as an expert in the field of accident reconstruction, stated that he arrived at the scene about 3 p.m. on the day at issue. Once there, Dahlberg was informed by defendant that he had been traveling slightly below the 40-mile-per-hour speed limit westbound on Golf Road when the victim came "out

of nowhere" and entered into his path. Dahlberg, while sitting in the backseat of a squad car with defendant, detected a "relatively strong odor of alcoholic beverage emanating from his breath." Dahlberg testified that defendant's eyes were "bloodshot" and "glassy." When Dahlberg asked defendant whether he had consumed any alcohol prior to the accident, defendant was "very hesitant" to answer and did not commit to an answer.

Based upon the condition of the truck defendant was driving, Dahlberg concluded that the damage was consistent with defendant's version of events that he had attempted to avoid hitting the victim prior to impact. Dahlberg further testified that there were no tire marks in the area before the location where the victim was struck and that tire marks past the area did not come from defendant's truck.

On cross-examination, Dahlberg testified that prior to speaking with defendant, he had not been told that the accident was alcohol related. Dahlberg stated that during his conversation with defendant, he had no problem understanding him. He also stated that there appeared to be "a lack of pre-impact braking and a lack of post-impact braking" on defendant's part.

The parties stipulated that the vodka bottle and cup recovered from defendant's vehicle contained ethyl alcohol. The parties further stipulated that based upon a blood sample taken from defendant at 5:40 p.m. the day of the accident, his blood-alcohol concentration (BAC) was .13.

The parties also stipulated that if called as a witness at trial, Officer Szmergalski of the Mount Prospect police department would testify that he spoke with Jeffrey Easton, the driver of the vehicle in which Terry Thomas was a passenger, after the accident. Easton told the officer that he saw the victim step off the curb and look to her left. When she saw the approaching traffic, the victim ran in front of the truck driven by defendant and he "tried to swerve to avoid hitting her."

After the parties rested, the court heard closing arguments. It then found defendant guilty of three counts of reckless homicide and two counts of aggravated driving under the influence of alcohol. Defendant was subsequently sentenced and he now appeals.

## ANALYSIS

### I. Constitutionality of the Reckless Homicide Statute

Defendant first contends that section 9—3(b) of the Illinois Criminal Code of 1961 (720 ILCS 5/9—3(b) (West 2000)), the reckless homicide statute, is unconstitutional.

■ The statute provides:

"(b) In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary." 720 ILCS 5/9—3(b) (West 2000).

Defendant argues this statute is unconstitutional because it violates his due process rights by creating a mandatory presumption of recklessness. He asserts that the effect of this is to improperly relieve the State of its burden of proving recklessness beyond a reasonable doubt.

■ It is well settled that in establishing a defendant's guilt, the State may rely upon presumptions or inferences. *People v. Hester*, 131 Ill. 2d 91, 98 (1989). "A presumption is a legal device which permits or requires the fact finder to assume the existence of a presumed or ultimate fact, after certain predicate or basic facts have been established." *People v. Watts*, 181 Ill. 2d 133, 141 (1998). A presumption that is permissive allows, but does not require, the finder of fact "to infer the existence of the ultimate or presumed fact upon proof of the predicate fact, without placing any burden on the defendant." *Watts*, 181 Ill. 2d at 142. "With a permissive presumption, the fact finder 'is free to accept or reject the suggested presumption.' " *Watts*, 181 Ill. 3d at 142, quoting *Hester*, 131 Ill. 2d at 99.

■ "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Francis v. Franklin*, 471 U.S. 307, 314, 85 L. Ed. 2d 344, 353, 105 S. Ct. 1965, 1971 (1985). In *Francis* the Supreme Court explained:

"A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted." *Francis*, 471 U.S. at 314 n.2, 85 L. Ed. 2d at 353 n.2, 105 S. Ct. at 1971 n.2.

Mandatory presumptions are unconstitutional because they violate a defendant's due process rights under the Illinois and United States Constitutions. *Watts*, 181 Ill. 2d at 142-49.

In support of his claim that the reckless homicide statute under which he was convicted is unconstitutional, defendant relies upon *People v. Pomykala*, 326 Ill. App. 3d 390 (2001), *appeal allowed*, 198 Ill. 2d 628 (2002), where the Third District held that section 9—3(b) is unconstitutional. In so ruling, the *Pomykala* court reviewed the language of the reckless homicide statute and concluded that the

phrase "shall be presumed evidence of a reckless act" communicated "the mandatory nature of the presumption and causes the burden of proof to shift to the defendant." *Pomykala*, 326 Ill. App. 3d at 394.

The State argues that section 9—3(b) does not create a mandatory presumption. Rather, the State asserts that the presumption is permissive and that the trier of fact may accept or reject it. It argues that a finding by the trier of fact that a defendant is under the influence of alcohol does not require a finding of recklessness. Instead, it only requires that the trier of fact consider intoxication as *"evidence of a reckless act."* (Emphasis added.) 720 ILCS 5/9—3(b) (West 2000).

Although this argument was expressly rejected by the *Pomykala* court, the State directs this court to the legislative history of section 9—3(b). The State notes that Public Act 87—1198 (Pub. Act 87—1198, eff. September 25, 1992) changed the language of the reckless homicide statute from "being under the influence of alcohol *** at the time of the alleged violation shall be *prima facie* evidence of a reckless act" to "being under the influence of alcohol *** at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary." The State directs this court to a statement made by Senator Dart during debates on the amendment when he stated that the amendment "makes a technical change in the definition of 'prima facie' *** in response to a recent case law [*sic*], People versus Atteberry." 87th Ill. Gen. Assem., Senate Proceedings, July 1, 1992, at 21-22 (statements of Senator Dart). The State also directs us to a statement made by Representative Homer where he explained that the change was intended to "substitute the actual legal definition of 'prima facie' evidence." 87th Ill. Gen. Assem., House Proceedings, June 30, 1992, at 67-68 (statements of Representative Homer).

■We must begin our analysis with the premise that courts have a duty to affirm the constitutionality of a statute if possible. See *People v. Falbe*, 189 Ill. 2d 635, 639 (2000). Also, a statute is presumed constitutional and any doubts must be resolved in favor of validity. *Falbe*, 189 Ill. 2d at 639.

In *People v. Atteberry*, 213 Ill. App. 3d 851 (1991), this court reversed a defendant's conviction for reckless homicide where the jury received a non-pattern instruction that used the phrase "prima facie evidence" in the absence of a definition of the phrase. The *Atteberry* court quoted Black's Law Dictionary's definition of *prima facie* as being " 'a fact presumed to be true unless disproved by some evidence to the contrary.' " *Atteberry*, 213 Ill. App. 3d at 854, quoting Black's Law Dictionary 1071 (5th ed. 1979). The court explained that "[w]hen using the term '*prima facie*' within an instruction, the instruction should

contain an explanation of its meaning." *Atteberry*, 213 Ill. App. 3d at 854. As the legislative history makes clear, Public Act 87—1198, which amended the language of section 9—3(b) into its current form, was passed to address *Atteberry*. However, the court in *Atteberry* did not find section 9—3(b) to be unconstitutional; it merely required that when a jury was to be instructed regarding *"prima facie* evidence," it must also be instructed as to the definition of the term *"prima facie."*

Prior to *Atteberry*, our supreme court addressed the preamended version of section 9—3(b) in *People v. Jackson*, 118 Ill. 2d 179 (1987). There, the court stated, in the context of a double jeopardy analysis, that a conviction for driving under the influence of alcohol is "only evidence of the reckless act" and that

> "such a conviction is *prima facie* evidence, but it is not conclusive. The conviction does not establish an essential element of reckless homicide, that is, a reckless act. The *prima facie* evidence may be rebutted by showing that although the accused was under the influence of alcohol when he performed the acts causing the death of another, the acts were not in fact performed recklessly." *Jackson*, 118 Ill. 2d at 191, *overruled on other grounds by People v. Stefan*, 146 Ill. 2d 324, 338 (1992).

In reliance upon the supreme court's decision in *Jackson*, this court in *People v. Garofalo*, 181 Ill. App. 3d 972 (1989), upheld the pre-amended version of section 9—3(b) against a constitutional challenge. This court held that the language "being under the influence of alcohol *** shall be *prima facie* evidence of a reckless act" did not create a mandatory presumption because the statute spoke in terms of *prima facie*, rather than conclusive, evidence. *Garofalo*, 181 Ill. App. 3d at 978.

In *People v. Robinson*, 167 Ill. 2d 53, 75 (1995), our supreme court stated:

> "In the criminal context, *prima facie* evidence is in the nature of a presumption, more accurately described as an instructed inference. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 304.1, at 114-16 (5th ed. 1990).) *Prima facie* evidence may be defined as a quantum of evidence sufficient to satisfy the burden of production concerning a basic fact that allows an inference of a presumed fact. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 302.8, at 102 (5th ed. 1990).) Where the burden of production is satisfied, the trier of fact is permitted but not required to find the presumed fact. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 304.1, at 115-16 (5th ed. 1990).
>
> Even where the State satisfies the burden of production concerning a basic fact, a defendant bears no actual burden to produce evidence to prevent operation of the inference."

■ We do not find the presumption contained in the current version of section 9—3(b) to be mandatory. The amendment to the statute under Public Act 87—1198 was not a substantive change. Rather, the purpose of the change to the statute, as shown by the legislative history of Public Act 87—1198, was merely technical in that it replaced the words *"prima facie"* with the definition of the phrase. Our supreme court in *Robinson* makes clear that even if the State satisfies its burden of producing *"prima facie* evidence," the trier of fact may reject the presumed fact, even where the defendant has failed to produce any evidence.

Under section 9—3(b), when the State presents evidence of intoxication, the "presumed element" of recklessness is not removed from the case, nor is the finder of fact required to find recklessness. Instead, a plain reading of the statute establishes that while intoxication is presumed to be evidence of a reckless act, it is not conclusive evidence. The presumed element of recklessness is not removed from the case even though the trier of fact must consider intoxication as evidence of recklessness "unless disproved by evidence to the contrary." 720 ILCS 5/9—3(b) (West 2000). The statute also does not shift the burden of proof. The "evidence to the contrary" may be presented in the State's case, as it was here. Thus, we find that the holding in *Garofalo*, 181 Ill. App. 3d at 978, that the language "being under the influence of alcohol *** shall be *prima facie* evidence of a reckless act," does not equate to a mandatory presumption, applicable to the current version of section 9—3(b). This conclusion is supported by cases decided subsequent to the enactment of Public Act 87—1198. In *People v. Latto*, 304 Ill. App. 3d 791, 799 (1999), this court, when deciding a case involving the language at issue here, stated that "[b]eing under the influence of alcohol is *prima facie* evidence of a reckless act." Likewise, in *People v. Kraus*, 318 Ill. App. 3d 774, 784 (2000), this court stated "[b]eing under the influence of alcohol at the time of the incident resulting in death is *prima facie* evidence of a reckless act." For the above reasons, we disagree with the holding in *Pomykala* and we decline to follow it.

## II. Sufficiency of the Evidence

Defendant contends next that the State failed to prove him guilty beyond a reasonable doubt. He first argues that the State failed to prove that he drove his vehicle while under the influence of alcohol. He directs this court to the testimony of the witnesses who observed the accident, none of whom testified that defendant was driving in an erratic manner prior to the accident. He also directs this court to the testimony of the investigating officers, such as Officer Addante, who

spoke with defendant from about three or four feet and did not smell alcohol on him or notice anything unusual about his behavior.

■ When considering the sufficiency of the evidence, a reviewing court will look at the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Brown*, 185 Ill. 2d 229, 247 (1998). On appeal, it is not the function of this court to retry a defendant when considering a challenge to the sufficiency of the evidence; rather, determinations as to the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are for the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991).

■ Under Illinois law, a person with a BAC of 0.08 is considered to be under the influence of alcohol. See 625 ILCS 5/11—501.2(b)(3) (West 2000). Evidence was presented that more than three hours after the accident, defendant's BAC was 0.13. Investigating officers testified that, at the scene, defendant's eyes were glassy and he smelled of alcohol. Also, Addante testified that defendant failed two sobriety tests. Therefore, we find that sufficient evidence was presented to establish that defendant drove while under the influence of alcohol.

■ Defendant argues next that the State failed to prove that his acts were the proximate cause of the victim's death. He asserts that the undisputed evidence shows that at the time of the accident, he was driving within his lane of traffic while at or below the speed limit of 40 miles per hour. Defendant further asserts that the evidence established that the victim was crossing outside of the crosswalk, without turning her head to check for oncoming traffic, in an area where cars were traveling approximately 40 miles per hour, a relatively high rate of speed.

While it is true that the victim's actions immediately before the accident contributed to her death, in a prosecution for reckless homicide, the State is not required to prove that the defendant's acts were the sole and immediate cause of the victim's death. *Latto*, 304 Ill. App. 3d at 800. Instead, the State is required to prove that the defendant's acts were a contributing cause such that death did not result from a cause unconnected with the defendant. *Latto*, 304 Ill. App. 3d at 800.

Evidence was presented establishing that defendant consumed several drinks prior to the accident and that his intoxication was evident based upon a strong odor of alcohol on his breath and the "bloodshot" and "glassy" condition of his eyes. It was established at trial that soon after the accident, defendant failed two field sobriety tests and that more than three hours after the accident, defendant's

BAC was .13. Dahlberg, who testified as an expert in accident reconstruction, testified that there was no evidence of defendant braking his vehicle either before or after the accident. Given defendant's level of intoxication and his failure to brake his truck at the scene, we find that defendant's dulled reflexes resulting from his intoxication is sufficient to establish causation. See *People v. Petersen*, 110 Ill. App. 3d 647, 660 (1982).

Defendant also argues that the State failed to prove that he acted recklessly on the day in question. He asserts that no evidence was presented of erratic or improper driving on his part prior to the accident. He also argues that he performed "remarkably well" on many parts of the field sobriety tests and that the victim was crossing the street against traffic in a 40-mile-per-hour speed zone without being in a crosswalk.

■ Pursuant to the Illinois Criminal Code, "[a] person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk *** and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4—6 (West 2000). It is for the trier of fact to determine whether recklessness has been proved. *People v. Wilson*, 143 Ill. 2d 236, 246 (1991). In a prosecution for reckless homicide, recklessness should be inferred from all the facts and circumstances present in the record, viewed as a whole, and may be established by evidence regarding the defendant driver's physical condition. *People v. Spencer*, 303 Ill. App. 3d 861, 869 (1999). Intoxication is probative on the issue of recklessness. *People v. Smith*, 149 Ill. 2d 558, 565 (1992). "If the State introduces evidence of intoxication in *** [a] reckless homicide case, it need only present some evidence of intoxication from which, along with other circumstances, recklessness may be inferred." *Smith*, 149 Ill. 2d at 565.

■ Evidence was presented that on the morning of the accident defendant purchased 1.75 liters of vodka and consumed several drinks of alcohol before getting into his truck to drive home. After the accident, the bottle of vodka, which only had about one-quarter of its contents remaining, and a cup containing alcohol were recovered from defendant's truck. Following the accident, defendant had a "strong odor" of alcohol on his breath and he failed two field sobriety tests. The trial court also heard evidence establishing that other drivers on Golf Road near defendant saw the victim prior to her being struck, whereas he did not. It was for the trial court to determine the weight to be given this evidence. Under the facts of this case, we cannot say that the evidence was "so unreasonable, improbable, or so unsatisfactory" as to warrant reversal of defendant's reckless homicide convictions. *People v. Young*, 128 Ill. 2d 1, 52 (1989).

### III. Providing an Interpreter

■ Defendant's next contention is that the trial court erred in failing to provide *sua sponte* an interpreter for Ambala Patel. He argues that because Mr. Patel had great difficulty in understanding and answering questions, he was incompetent as a witness.

Defendant directs this court to several instances during Patel's testimony where he either failed to answer a question posed to him or his answer was nonresponsive. He further directs this court to an exchange wherein the trial court allowed the State to ask Patel leading questions and stated that it had difficulty understanding his testimony.

Normally, the calling of an interpreter is within the discretion of the trial court. *People v. Soldat*, 32 Ill. 2d 478, 481 (1965). An abuse of discretion may be shown where the record establishes that the witness was not understandable, comprehensible or intelligible such that the lack of an interpreter deprived the defendant of a basic right. *People v. Bragg*, 68 Ill. App. 3d 622, 630 (1979).

A review of Patel's testimony establishes that, for the most part, he gave appropriate responses to questions. While it is true that at times he either did not answer a question or gave a response that failed to answer a question, each time that occurred, he ultimately answered the question after it was repeated, rephrased or broken down into parts. Under these circumstances, we cannot sat that Patel's testimony was not understandable, comprehensible or intelligible. See *Bragg*, 68 Ill. App. 3d at 630.

### IV. Supreme Court Rule 412 Violation

■ Defendant's next contention is that he was prejudiced by the State's violation of Supreme Court Rule 412(a)(ii), when it failed to disclose to the defense his statement to Assistant State's Attorney Howes that he would take responsibility for driving under the influence of alcohol, but would not take responsibility for the reckless homicide.

Rule 412(a)(ii) provides in relevant part:

"(a) Except as otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel ***:

*** 

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements[.]" 188 Ill. 2d R. 412(a)(ii).

Initially, defendant has waived his challenge to admission of this

testimony by failing to object to it at trial. *People v. Heard*, 187 Ill. 2d 36, 65 (1999). By failing to object, defense counsel deprived the trial court of the opportunity to prevent or correct any error associated with the alleged discovery violation, and under the circumstances, we will not allow counsel to "gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently." *People v. Carlson*, 79 Ill. 2d 564, 577 (1980).

While we find the issue waived in this case, we choose to address it in order to provide guidance to the trial courts, which must often deal with this serious problem. We find that the actions of the trial prosecutor violated Rule 412(a)(ii). The State argues that the soliciting of the nondisclosed statements was entirely inadvertent. The record shows otherwise. The actual question posed to Howes on redirect, which elicited her response regarding defendant's alleged admissions, was, "Did you hear about whether he was in an intoxicated condition?" Since any response to this question besides an admission against interest would have been objectionable as hearsay, we are of the opinion that the trial prosecutor could only have sought an admission on defendant's part from Howe.

Despite this conclusion, the State's failure to comply with the discovery rules does not require reversal of a conviction in the absence of a showing of prejudice. *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). The burden is upon the defendant to show surprise or prejudice. *Heard*, 187 Ill. 2d at 63. "The defendant's failure to request a continuance upon learning of a discovery violation is a relevant factor to consider in determining whether the new evidence prejudiced the defendant." *Heard*, 187 Ill. 2d at 63. Under Rule 412, a "defendant cannot persuasively claim prejudice if he does not request a continuance to investigate the alleged surprise statement, but instead proceeds with the trial." *People v. Young*, 263 Ill. App. 3d 627, 633 (1994).

Defendant's argument that he was prejudiced is also undercut by defense counsel's concession that defendant had consumed alcohol prior to the accident and that, at the time he was tested, his BAC was above the legal limit. During closing arguments, defense counsel stated, "Granted, the defendant did consume alcohol. There is no question at all. He did have a blood alcohol content of point 13 \*\*\*." Consequently, the complained-of testimony from Howes theoretically supported the defense theory that while defendant may have been guilty of aggravated driving under the influence, he was not guilty of the reckless homicide charge. This would explain the lack of an objection to the testimony. We find that defendant has not met his burden of proving that he was prejudiced by the State's discovery violation.

## V. Sentencing Issues

Finally, defendant contends that the trial court erred when it sentenced him to four years' imprisonment on his reckless homicide conviction. He first argues that the trial court erred when it denied his request for probation.

At sentencing, the State introduced the victim impact statements of three of the victim's children. The State then requested a 10-year prison term for defendant. In mitigation, defense counsel noted that numerous members of defendant's family were present at sentencing and that defendant was sincerely contrite about the victim's death. While addressing the contents of the presentence report, defense counsel noted that at the time of sentencing, defendant was 61 years old, was married with children and had received a master's degree in engineering. Counsel argued that defendant had no prior arrests and had recently undergone self-imposed treatment for alcohol abuse. Defense counsel recommended a sentence of probation.

The trial court imposed a four-year term of imprisonment on all of defendant's convictions for reckless homicide and aggravated driving under the influence of alcohol. After defendant filed a motion to reduce sentence, the trial court sentenced defendant to a three-year prison term on his aggravated driving under the influence of alcohol convictions, to be served concurrently with the previously imposed four-year term on the reckless homicide convictions.

■ Section 5—6—1(a) of the Unified Code of Corrections (730 ILCS 5/5—6—1(a) (West 2000)) provides, in relevant part:

"(a) Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

(2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

In reliance upon this statute, defendant argues that the trial court erred in denying his request for probation because the trial court failed to make any findings with respect to its decision to deny probation.

"The granting or denial of probation rests within the sound discretion of the trial court, and refusal to grant probation will be disturbed by a reviewing court only upon a showing of an abuse of the trial

court's discretion." *People v. Ruskey*, 149 Ill. App. 3d 482, 494 (1986). The record must show the trial court's substantial compliance with the requirements of section 5—6—1. *People v. Cox*, 82 Ill. 2d 268, 281 (1980). The trial court is not required to expressly set forth its specific findings or to verbalize its reasons or to expressly state the basis on which it relied in refusing to grant probation. *Ruskey*, 149 Ill. App. 3d at 495. Rather, substantial compliance with the statute will be found where the trial court considered "all relevant factors presented at the sentencing hearing." *People v. Binkley*, 176 Ill. App. 3d 539, 543 (1988).

■ Based upon the record before us, we find that the trial court considered the evidence presented at sentencing and was clearly of the opinion that sentencing defendant to probation would deprecate the seriousness of his conduct and would be inconsistent with the ends of justice. Thus, the trial court did not err in denying defendant's request for probation.

■ Next, defendant directs this court to the trial court's statement that "but for your act of drinking and driving there would not be a dead woman today." Based upon this statement, defendant argues that the trial court improperly considered the death of the victim, an element inherent in the offense of reckless homicide, when sentencing him. See *People v. Beck*, 295 Ill. App. 3d 1050, 1066 (1998).

The trial court's determination as to the appropriate sentence is entitled to great deference and will not be disturbed absent an abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991). To establish that the trial court abused its discretion in imposing sentence, a defendant must affirmatively establish that the sentence was based upon improper considerations or was otherwise erroneous. *People v. Conley*, 118 Ill. App. 3d 122, 133 (1983). In reviewing whether a sentence was based on proper factors, this court will not focus on a few words or statements by the trial court; rather, the record will be considered as a whole. *People v. Sutton*, 252 Ill. App. 3d 172, 191 (1993).

We disagree with defendant's assertion that the trial court improperly considered the death of the victim when sentencing him. Taken in context, the trial court was not using the death of the victim as a factor in aggravation. Rather, the trial court was briefly summarizing the circumstances of the case, which had resulted in defendant's convictions. It is appropriate for the trial court when sentencing a defendant to consider the particular circumstances of the case, including the gravity of the offense and the circumstances surrounding the commission of the offense. *People v. Bradford*, 187 Ill. App. 3d 903, 922 (1989).

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., concurs.

JUSTICE GREIMAN, dissenting:
I am compelled to dissent from the majority's thoughtful analysis with respect to the constitutionality of section 9—3(b).

While the majority provides a compelling argument as to the constitutionality of the statute, I believe that the language "shall be presumed to be evidence of a reckless act" expresses a presumption which relieves the State from the obligation of proving an essential element of the crime and inappropriately shifts the burden of coming forward with evidence to the defendant.

The constitutionality of the statute has been previously considered by the Appellate Court, Third District in *People v. Pomykala*, 326 Ill. App. 3d 390 (2001), and is presently on appeal to our supreme court. I agree with the Third District in its analysis.